Docket No. 108500.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JERRY A. STOFFEL, Appellee.

*Opinion filed December 23, 2010.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, and Theis concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion, joined by Chief Justice Kilbride and Justice Garman.

**OPINION**

The primary issue presented in this case is whether, in light of section 122–1(d) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1(d) (West 2006)) and this court's decision in *People v. Shellstrom*, 216 Ill. 2d 45 (2005), a trial court's decision *not* to "recharacterize" a pleading filed by a *pro se* defendant as a postconviction petition may be reviewed for error. The appellate court held that it may and, after so holding, reversed the judgment of the circuit court of Fayette County dismissing the defendant's *pro se* pleading and remanded the cause with instructions to recharacterize the pleading as a postconviction petition. 389 Ill. App. 3d 238. We

disagree with the appellate court's holding that a trial court's decision not to recharacterize a *pro se* pleading may be reviewed for error. However, we affirm the judgment of the appellate court, as modified, on other grounds.

Background

Following a jury trial, the defendant, Jerry Stoffel, was found guilty of unlawful manufacture of a substance containing methamphetamine weighing between 400 and 900 grams, criminal synthetic drug manufacture conspiracy, and unlawful possession with intent to manufacture a controlled substance. Defendant was sentenced to 15 years' imprisonment on each offense, to run concurrently. On direct appeal, defendant's conviction and sentence for unlawful manufacture were affirmed, but his convictions and sentences for the remaining two offenses were vacated pursuant to *People v. King*, 66 Ill. 2d 551 (1977). *People v. Stoffel*, No. 5–05–0105 (2007) (unpublished order under Supreme Court Rule 23).

On October 27, 2006, while defendant's direct appeal was pending, defendant filed a "petition for relief from judgment," which was brought "pursuant to the Constitution of the United States, the Constitution of the State of Illinois," and section 2–1401 of the Code of Civil Procedure (735 ILCS 5/2–1401 (West 2006)). In this pleading, defendant contended that "waste product is not intended to be considered part of the 'substance containing methamphetamine,' and *** including the weight of such waste products to set the penalties results in an unconstitutional penalty." Defendant alleged that, in his case, waste product was improperly included in determining the weight of the substance containing methamphetamine that he was convicted of manufacturing and, therefore, his sentence was unconstitutional and void. On November 28, 2006, counsel was appointed for defendant.

On December 11, 2006, a status hearing was held before Judge Daniel Hartigan. Defendant's attorney advised the court: "This is another post-conviction petition. It's going to take considerably more work on my part." Counsel requested a continuance. In response, the State commented: "Hang on a second, until we have a little more specific information about what's going on here. My experience in

the past is if we just blindly continue it for a status, nothing gets done and we waste a court appearance." The case was passed for later in the day. No further transcript of the proceedings exists but a docket entry states that the case was set for status on February 5, 2007.

On December 19, 2006, the State filed a "motion to summarily dismiss the defendant's petition for relief from judgment." In this motion, the State argued that defendant failed to allege there was newly discovered evidence or any "errors of fact" which would warrant relief under section 2–1401.

On February 5, 2007, the scheduled status hearing was held before a second judge, Judge Michael McHaney. During this hearing, the following exchange occurred:

> "THE COURT: It looks like December 19, 2006, the State filed a motion to summarily dismiss defendant's petition for relief from judgment. Is this a petition for *habeas corpus* or a petition for post-conviction?
>
> [Defense counsel]: Post-conviction relief, Your Honor.
>
> THE COURT: Instead, the defendant's requesting time to respond to the State?
>
> [Defense counsel]: We are, Your Honor, and I would expect that we are probably going to be doing some fairly substantial renovations on Mr. Stoffel's post-conviction petition, which may take care of the motion to strike."

The State did not challenge defense counsel's description of defendant's filing as a postconviction petition. The case was continued to March 21, 2007.

On March 21, 2007, defendant appeared before Judge Michael McHaney but defense counsel was not present, having undergone surgery the previous day. After the State informed the court that a response to its motion to dismiss had not yet been filed, the court inquired of defendant: "Is this a post-conviction petition, Mr. Stoffel?" Defendant responded, "Yes, sir." The court then advised: "I've made a docket entry that states defendant in DOC custody and present. [Defense counsel] surgery. [Defense counsel] to file response to State's motion to dismiss and 651–C Certificate on or before April 11th."

At a hearing held on April 11, 2007, before a third judge, Judge

-3-

S. Gene Schwarm, the court inquired of defense counsel as to what he had filed in the matter and, in particular, whether he had filed a response to the State's motion to dismiss. The following colloquy then occurred:

> "[Defense counsel]: I think this should be treated as a post-conviction petition, Your Honor, for all practical purposes. I have a supplement to that. I think we'll need to clarify the issues.
>
> THE COURT: Are you in a position to file that today or you need some time to make sure that's what you want to file?
>
> [Defense counsel]: I would file it today ***."

Again, the State did not object to defense counsel's request to treat defendant's *pro se* filing as a postconviction petition. Defense counsel then filed a "Supplement to Post Conviction Petition," which alleged violations of defendant's rights under the Illinois Constitution, and a certificate pursuant to Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)), indicating he had complied with the requirements that must be met by counsel appointed under the Act. The trial court also granted defense counsel seven days to file a response to the State's motion to dismiss and continued the matter to May 2, 2007.

On April 18, 2007, defense counsel filed a second "Supplement to Post Conviction Petition," which raised a claim that defendant's federal constitutional rights had been violated, a second Rule 651(c) certificate, and a response to the State's motion to dismiss. In the response, defendant maintained that the State erroneously assumed defendant's petition fell under section 2–1401 when, in fact, as supplemented, it was a postconviction petition.

On April 19, 2007, the State filed a motion to strike defendant's supplements to the postconviction petition and response to its motion to dismiss. The State argued that defendant's petition was labeled a section 2–1401 petition and counsel could not supplement a postconviction petition that was never filed.

On May 2, 2007, at the hearing on the State's motion to dismiss, before Judge Michael McHaney, the State commented:

> "The defense filed a response to our motion to dismiss.

Subsequent to our motion to dismiss being filed, they filed what has been captioned a supplement to post-conviction petition. Then they filed a response to our motion to dismiss and I filed a motion to strike both the supplement and response."

Thereafter, the State argued:

"You can't file a petition or an amendment or a supplement to a post-conviction petition that is yet to be filed.
***

This is not a case where the defendant files some document with the Court where it's unclear on its face whether it's a post-conviction petition or it's a 2–1401 petition and where the Court has to look at the substance of the petition and try to make a determination and where so many of the Appellate Court cases have come along saying, oh, you misread this one. This one of the defendant comes right out and says it's a petition under 2–1401, and that's what he's stuck with."

Defense counsel responded:

"Your Honor, it was my original understanding from this when I was appointed that I was to supplement this motion and it was to be treated as a post-conviction petition. That's the way that 99.9 percent of these pleadings are treated and that's the way that this one should be treated.

If the State desires that the Court examine the pleadings and determine whether or not they should be treated as post-conviction under the provisions of [the Post-Conviction Hearing Act] then so be it. And the Court can certainly do that. The handwritten petition–the State is correct in saying that the handwritten petition–excuse me, motion of the defendant originally only goes to the petition for relief from judgment. He has a lot more claims that he's stating in his petition for relief from judgment that I think need to be addressed. That's what we have been trying to get at in our supplement entitled supplement to post-conviction petition.

If the Court wants us to go back to square one and do that over again then we will, but the easier proceeding would be

for the Court to review this matter and then treat it as a post-conviction petition. That's really what it should have been from the square one.

> If the State accuses me of being overzealous in the defense of my client, then so be it; I will be overzealous in the defense of my client. He has claims that need to be addressed, claims of a constitutional nature, and that's what we're trying to get taken up."

The court took the matter under advisement.

No order was subsequently entered. However, a docket entry dated May 3, 2007, states:

> "This court has considered the defendant's previous petition for relief from judgment filed 10-27-06, as well as the State's motion to dismiss same filed 12-19-06, plus the two 'supplements to post-conviction petition' filed 4-11-07 and 4-18-07, respectively; the defendant's counsel has filed a SCR 651(c) certificate; this court has examined the court file and being fully advised in the premises hereby finds that the State's motion to summarily dismiss defendant's petition for relief from judgment is well taken; the defendant's attorney cannot caption his supplemental pleading as a post-conviction petition and thereby magically transform a pleading filed pursuant to 735 ILCS 5/2–1401 as being filed pursuant to 725 ILCS 5/122–1; accordingly, the State's motion to dismiss the defendant's petition for relief from judgment is granted."

On appeal, the appellate court reversed. 389 Ill. App. 3d 238. The appellate court initially held that a trial court's decision regarding recharacterization, including the decision not to recharacterize a *pro se* pleading as a postconviction petition, is subject to review under an abuse of discretion standard. Applying that standard, the appellate court concluded that the trial court in this case "abused its discretion by acting arbitrarily in failing to recharacterize" defendant's pleading as a postconviction petition (389 Ill. App. 3d at 244), after repeated requests from defense counsel to do so and after the trial court itself treated the petition as a postconviction petition during the proceedings. Accordingly, the appellate court reversed the judgment of the trial court and remanded the cause with instructions to

-6-

recharacterize defendant's filing as a postconviction petition.

One justice dissented. The dissenting justice maintained that a trial court's failure to recharacterize a petition cannot be reviewed for error because section 122–1(d) of the Act, and this court's decision in *People v. Shellstrom*, 216 Ill. 2d 45 (2005), remove "any obligation on the part of the circuit court to even consider doing so." 389 Ill. App. 3d at 246 (Welch, J., dissenting).

We granted the State's petition for leave to appeal. 210 Ill. 2d R. 315.

Analysis

The State contends that the appellate court erred in holding that a trial court's decision not to recharacterize a defendant's *pro se* pleading as a postconviction petition is subject to review under the abuse of discretion standard. According to the State, a trial court's failure to recharacterize a *pro se* pleading cannot be reviewed for error. In support, the State points to paragraph (d) of section 122–1 of the Act.

Section 122–1 sets out the general requirements that must be met by a defendant seeking relief under the Act:

> "§122–1. Petition in the trial court.
>
> (a) Any person imprisoned in the penitentiary may institute a proceeding under this Article if the person asserts that:
>
> > (1) in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both[.]" 725 ILCS 5/122–1(a)(1) (West 2006).

Paragraph (d) of section 122–1 imposes the following requirement:

> "(d) A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it

-7-

could otherwise have stated some grounds for relief under this Article." 725 ILCS 5/122–1(d) (West 2006).

According to the State, the words "need not evaluate" in paragraph (d) mean there is no requirement that a trial court recharacterize a defendant's *pro se* pleading as a postconviction petition and, hence, no error if the trial court declines to do so.

This court addressed section 122–1(d) in *Shellstrom.* In *Shellstrom*, we reaffirmed the long-standing practice in Illinois of "recharacterization," *i.e.*, the process whereby a trial court independently evaluates a pleading filed by a *pro se* defendant and, if the pleading alleges a deprivation of rights cognizable in a postconviction proceeding, treats "the pleading as a postconviction petition, even where the pleading is labeled differently." *Shellstrom*, 216 Ill. 2d at 52-53. We observed:

> " 'It is apparent that the same lack of legal knowledge which causes a prisoner to draft an inadequate post-conviction petition might result in his selecting the wrong method of collaterally attacking his conviction. A salutary result, consistent with the intent of the Post-Conviction Hearing Act as expressed in [*People v.*] *Slaughter*[, 39 Ill. 2d 278 (1968)], would be achieved if the circuit court, upon finding that a *pro se* petition, however labeled, and however inartfully drawn, alleged violations of the petitioner's rights cognizable in a post-conviction proceeding, would thereafter, for all purposes, treat it as such.' " (Emphasis omitted.) *Shellstrom*, 216 Ill. 2d at 51, quoting *People ex rel. Palmer v. Twomey*, 53 Ill. 2d 479, 484 (1973).

In our analysis in *Shellstrom*, we concluded that section 122–1(d) does not bar a trial court from recharacterizing a defendant's *pro se* pleading. As we explained, because section 122–1(d) states that the trial court "need not" treat the defendant's improperly labeled pleading as a postconviction petition, " 'then, by the strongest of implications, it also *may* do so.' " (Emphasis in original.) *Shellstrom*, 216 Ill. 2d at 53 n.1, quoting *People v. Helgesen*, 347 Ill. App. 3d 672, 676 (2004).

However, we also observed, "while a trial court *may* treat a *pro se* pleading as a postconviction petition, there is no *requirement* that

the court do so." (Emphases in original.) *Shellstrom*, 216 Ill. 2d at 53 n.1. Specifically, in connection with paragraph (d) of section 122–1, we stated:

> "[I]f a *pro se* pleading *alleges constitutional deprivations* that are cognizable under the Act, but, as in the case at bar, the pleading makes no mention of the Act, *a trial court is under no obligation* to treat the pleading as a postconviction petition." (Emphases added.) *Shellstrom*, 216 Ill. 2d at 53 n.1.

*Shellstrom* makes plain that a trial court has *no obligation* to recharacterize a *pro se* pleading pursuant to section 122–1(d). It cannot be error for a trial court to fail to do something it is not required to do. Accordingly, we hold that, in light of section 122–1(d), a trial court's decision *not* to recharacterize a defendant's *pro se* pleading as a postconviction petition may not be reviewed for error.

Importantly, however, the rule that a trial court "need not evaluate" a defendant's *pro se* pleading to determine whether it states a postconviction claim does not extend past the trial court's initial, independent review of that pleading. This conclusion follows logically from the nature of the rule itself: once the trial court has, in fact, evaluated a *pro se* pleading and determined that, despite the lack of an explicit reference to the Act, it should be treated as a postconviction petition, the rule that it "need not" do so is simply no longer relevant. The purpose of section 122–1(d) confirms this understanding of the rule.

Paragraph (d) of section 122–1 was enacted in response to a special concurrence authored by Justice Steigmann in *People v. Sturgeon*, 272 Ill. App. 3d 48, 54 (1995). See 89 Ill. Gen. Assem., Senate Proceedings, March 26, 1996, at 42-43 (statements of Senator Petka) ("This legislation is in response to a–an appellate court justice request to redress a case that basically required appellate court justices [*sic*] to scan a document to determine whether or not any type of relief could be granted under the document"). In his special concurrence, Justice Steigmann noted that in 1983, the legislature added section 122–2.1 to the Act (See 725 ILCS 5/122–2.1 (West 2006)). *Sturgeon*, 272 Ill. App. 3d at 54-55 (Steigmann, J., specially concurring). This section creates an initial stage of review in which the trial court must determine whether the defendant's petition is

frivolous or patently without merit. "At this stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State. Instead, the circuit court considers the petition independently, without any input from either side." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010). If the petition is not dismissed pursuant to section 122–2.1, then it proceeds to the second stage, where the circuit court may appoint counsel to represent the defendant and the State may file a motion to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418.

Justice Steigmann explained that

> "[t]he legislative policy underlying section 122–2.1 of the Act seeks to hold all post-conviction petitioners responsible for the adequacy of the claims they make. That section represents a legislative response to the frustration, expense, and bother which had resulted from the post-conviction petitions that have inundated the State's trial courts, frequently being filled with specious and spurious allegations." *Sturgeon*, 272 Ill. App. 3d at 55 (Steigmann, J., specially concurring).

Based on this policy, Justice Steigmann believed that

> "petitioners who seek collateral relief must correctly specify the particular kind of relief they are seeking and must provide an adequate basis therefor. Specifically, as in this case, if a petitioner files a section 2–1401 petition, *it is neither the concern nor the duty of the trial court* to search through it (typically, like the present case, consisting of multiple pages of legalistic ramblings) to determine whether the petitioner could possibly have stated a basis for proceeding under the Act." (Emphasis added.) *Sturgeon*, 272 Ill. App. 3d at 55 (Steigmann, J., specially concurring).

In other words, the purpose of paragraph (d) is to make it easier on trial judges when they are independently reviewing a defendant's *pro se* pleading and determining how it should be treated. This purpose is no longer relevant once the trial court has, in fact, determined that the pleading should be treated as a postconviction petition, has concluded that the petition is not frivolous or patently without merit, and has advanced the petition to second-stage review,

and counsel has been appointed to represent the defendant. Once counsel is present, he may "shape" the defendant's filing and include any additional claims that are necessary. The burden on a trial court to try to figure out what the *pro se* filing means no longer exists. It follows, then, that section 122–1(d) applies solely to the trial court's independent, first-stage review of a defendant's *pro se* pleading.

With the foregoing in mind, we turn to the facts of this case. If, at the outset of the proceedings, the trial court in the case at bar had treated defendant's pleading as a section 2–1401 petition and had *not* appointed counsel to represent defendant, and if the trial court had denied defendant relief without any further input (see, *e.g.*, *People v. Vincent*, 226 Ill. 2d 1 (2007)), then the defendant could not have alleged on appeal that the trial court erred in failing to treat his pleading as a postconviction petition. Under section 122–1(d), the trial court would have had no obligation to evaluate the defendant's pleading to determine whether it alleged a postconviction claim. However, this is not what occurred.

As the appellate court observed, on November 28, 2006,

> "the trial court appointed counsel to represent the defendant. Then, on March 21, 2007, it ordered the defendant's counsel to file a Rule 651(c) certificate. In taking these actions, the trial court was treating the defendant's pleading as a postconviction petition that had survived the first stage of the postconviction proceedings." 389 Ill. App. 3d at 244.

There is no dispute that the body of defendant's *pro se* petition alleged a constitutional violation which was cognizable as a postconviction claim and there is no dispute that Rule 651(c) pertains solely to postconviction counsel appointed pursuant to the Act. The trial court is presumed to know and follow the law. *People v. Jordan*, 218 Ill. 2d 255, 269 (2006). It is evident, therefore, that although defendant's pleading did not explicitly reference the Act, the pleading was deemed a postconviction petition, it survived summary dismissal, and it was advanced to the second stage of review where counsel was appointed. Therefore, section 122–1(d) was no longer applicable.

We note that our conclusion that defendant's petition was recharacterized by the trial court is not at odds with our holding in *Shellstrom* that unless the *pro se* defendant is first notified of

recharacterization "the pleading cannot be considered to have become a postconviction petition for purposes of applying to later pleadings the Act's restrictions on successive postconviction petitions" (*Shellstrom*, 216 Ill. 2d at 57). Unlike the present case, *Shellstrom* and its progeny (see *People v. Pearson*, 216 Ill. 2d 58 (2005); *People v. Swamynathan*, 236 Ill. 2d 103 (2010)) were cases in which the trial court summarily dismissed the defendant's *pro se* petition instead of advancing it and where, therefore, counsel was never appointed. This distinction is significant. The *Shellstrom* admonitions are designed to protect the rights of *pro se* defendants and, in particular, to inform them of the limitation on filing successive postconviction petitions and the need to amend their initial petition to include all possible postconviction claims. *Shellstrom*, 216 Ill. 2d at 57. But this is precisely the role performed by appointed counsel, who is required to consult with the defendant and make any amendments to the *pro se* petition that are necessary. See *People v. Suarez*, 224 Ill. 2d 37, 46 (2007); 134 Ill. 2d R. 651(c). Thus, as the appellate court below pointed out, the concerns raised in *Shellstrom* do not apply when counsel is present (389 Ill. App. 3d at 243), and the absence of admonitions in no way prejudices the defendant. Notably, defendant does not contest the appellate court's conclusion on this point and the State, during oral argument before this court, expressly noted its agreement with the appellate court and observed that *Shellstrom* admonitions "really only apply in the context of a *pro se* petitioner." We agree and hold that where, as here, a defendant's *pro se* petition is not summarily dismissed but is instead advanced for further review, and counsel is appointed to represent the defendant, *Shellstrom* admonitions are unnecessary. It follows, therefore, that the absence of admonitions in this case does not negate our conclusion that recharacterization occurred.

Despite the fact that defendant's pleading had been deemed a postconviction petition that had survived summary dismissal, the trial court in its final docket entry concluded that the petition could only be considered a section 2–1401 petition. The only reason offered by the trial court for this conclusion was the statement that defense counsel could not "magically transform" defendant's pleading. But counsel was not attempting to "magically transform" the pleading. Rather, as we have explained, the trial court itself had previously

determined that the pleading was a postconviction petition. Of course, it is possible that even after a pleading has been deemed a postconviction petition, further investigation by counsel will reveal that the substantive claims in the petition would be more appropriately addressed in another procedural vehicle. No argument has been made that such a situation exists here. Accordingly, we affirm that part of the appellate court's judgment which reversed the judgment of dismissal entered by the circuit court, not because the trial court in its final docket entry failed to "recharacterize" defendant's pleading, but because the trial court failed to offer any reasonable basis for treating the pleading as a section 2–1401 petition after the pleading had *already* been "recharacterized" as a postconviction petition and survived summary dismissal. Further, because the trial court should have continued to treat defendant's pleading as a postconviction petition, the trial court erred in denying defense counsel's motions to supplement. See, *e.g.*, *People v. Rivera*, 198 Ill. 2d 364, 379 (2002) (Fitzgerald, J., specially concurring) ("[N]either the provisions of the Act, nor holdings by this court, limit the right to amend a petition once the court finds that the petition contains nonfrivolous claims. Rather, this court has stated that counsel may make any necessary amendments to the original petition, without limitation").

Defendant contends that if we conclude that the trial court erred, we should remand this cause for further proceedings on the substantive question raised in his postconviction petition. We decline to do so. In the interests of judicial economy, we will address defendant's postconviction petition, as amended, on its merits.

Defendant was found guilty and sentenced under section 401(a)(6.5)(C) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(6.5)(C) (West 2004)). At the time of defendant's conviction,[1] the provision stated:

> "(a) Any person who violates this Section *** is guilty of a Class X felony and shall be sentenced to a term of imprisonment as provided in this subsection ***:

---

[1] Section 401 has since been amended so that it no longer applies to methamphetamine. See *People v. McCarty*, 223 Ill. 2d 109, 116 n.1 (2006).

\* \* \*

(6.5) \*\*\*

   \*\*\*

(C) not less that 12 years and not more than 50 years with respect to 400 grams or more but less than 900 grams of a substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof[.]" 720 ILCS 570/401(a)(6.5)(C) (West 2004).

In his petition as supplemented, defendant contends that the penalty imposed on him violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11) and principles of due process because the trial court used the "waste product" in determining the total weight of methamphetamine. Defendant maintains that the legislature did not intend for waste product to be considered as a part of the "substance containing methamphetamine" for purposes of sentencing a defendant.

In *People v. McCarty*, 223 Ill. 2d 109 (2006),[2] the question before this court was "whether, for purposes of section 401(a)(6.5)(D), 'substance containing methamphetamine' includes the by-product produced during the manufacture of methamphetamine." *McCarty*, 223 Ill. 2d at 124. In answering the question in the affirmative, we found that "the plain meaning of the phrase compels us to conclude that the legislature did not intend to exclude the weight of the by-product produced during the manufacture of methamphetamine from the total weight used in determining an individual's sentence for manufacturing methamphetamine." *McCarty*, 223 Ill. 2d at 125. Thereafter, we rejected the defendant's proportionate penalty and due process challenges to the statute, finding the statute was not cruel or degrading and that it was reasonably designed to remedy the particular evils the legislature was targeting in enacting it.

Although *McCarty* involved subparagraph (D) and the instant case involves subparagraph (C), we find *McCarty* controlling. Both

---

[2] This decision was filed eight days before defendant filed his *pro se* petition.

paragraphs are contained in the same section and subparagraph of the same act. Moreover, the language in the two paragraphs is identical. There is no logical basis to define the phrases differently under such circumstances. Thus, for the reasons stated in *McCarty*, we reject defendant's argument that waste product cannot be included in sentencing a defendant, and conclude that defendant's constitutional challenges, too, must fail. Accordingly, we modify the remand instructions entered by the appellate court. We instruct the circuit court to enter an order allowing defense counsel's amendments to defendant's postconviction petition and to deny defendant's petition on the merits.

### Conclusion

For the foregoing reasons, the judgment of the appellate court is affirmed as modified.

*Appellate court judgment affirmed as modified;*
*circuit court judgment reversed;*
*cause remanded with instructions.*

JUSTICE KARMEIER, dissenting:

I agree with the majority's conclusion that, in light of section 122–1(d) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1(d) (West 2006)) and this court's decision in *People v. Shellstrom*, 216 Ill. 2d 45 (2005), a trial court's decision not to recharacterize a *pro se* pleading as a postconviction petition may not be reviewed for error. I also agree that the trial court's actions herein, appointing counsel to represent defendant, ordering defense counsel to file a Rule 651(c) certificate, and failing to rule in an expeditious manner on the State's motion to dismiss the clearly labeled section 2–1401 petition, gave the appearance that defendant's pleading would be recharacterized as a postconviction petition. However, I disagree with the majority's conclusion that the trial court, by these actions, had indeed "recharacterized" defendant's pleading as a postconviction

-15-

petition for purposes of further proceedings under the Act. Rather, the court, in its discretion, clearly declined to recharacterize the pleading and its dismissal of defendant's *pro se* section 2–1401 petition should be affirmed.

This court has long held that a trial court may treat a *pro se* pleading which alleges a deprivation of constitutional rights cognizable under the Act as a postconviction petition. *People ex rel. Palmer v. Twomey*, 53 Ill. 2d 479, 484 (1973); *Shellstrom*, 216 Ill. 2d at 52-53. As we noted in *Shellstrom*, there are compelling reasons for allowing recharacterization:

> "First, recharacterization enables the issues to be properly framed. [Citations.] Second, recharacterization avoids the possible harshness of holding a pro se litigant to the letter of whatever label he happens to affix to his pleading, even when his claims are such that they could more appropriately be dealt with under a different heading. \*\*\*
>
> A third reason \*\*\* [is that] defendant [is] provided with appellate counsel to assist him in appealing the dismissal [of a postconviction petition]." *Shellstrom*, 216 Ill. 2d at 51-52.

See also *People v. Pearson*, 216 Ill. 2d 58 (2005).

However, as the majority recognizes, a trial court is not required to recharacterize a *pro se* pleading as a postconviction petition, even if the claims raised are cognizable under the Act, although this court has encouraged trial courts to do so when appropriate. *Shellstrom*, 216 Ill. 2d at 57 ("[W]e recognize that trial courts need not recharacterize a pro se pleading as a postconviction petition. However, we urge judges to consider recasting pleadings that warrant such treatment"). Here, due to the trial court's appointment of counsel, seeming acquiescence in defense counsel's claims that the pleading was a postconviction petition, and failure to immediately dismiss defendant's section 2–1401 petition, the majority finds that "the pleading had *already* been 'recharacterized' as a postconviction petition and survived summary dismissal." (Emphasis in original.) Slip op. at 13. A careful review of the facts and our case law dictates a different conclusion.

While it is true there was confusion as to the character of defendant's pleading, mostly due to the fact that three different circuit

court judges handled the proceedings, and this confusion led to the appointment of counsel and the ordering of a Rule 651(c) certificate, the record as a whole shows that neither the court nor the State ever agreed to treat the filing as a postconviction petition. Rather, after the initial status hearing in the matter, the State filed a "motion to summarily dismiss the defendant's petition for relief from judgment," which argued that defendant failed to allege there was newly discovered evidence or any "errors of fact" which would warrant relief under section 2–1401. At the next status hearing, defendant successfully requested time to respond to the State's motion and to make "substantial renovations on Mr. Stoffel's post-conviction petition, which may take care of the motion to strike." Although the State did not object to, nor the court correct, defense counsel's characterization of the pleading as a postconviction petition, at each appearance thereafter the State sought a response to its motion to dismiss, and the court continued to order defendant to file a response.

When defendant's response was eventually filed, it merely argued that the State erroneously assumed defendant's petition fell under section 2–1401 but that, as supplemented, it was a postconviction petition. The State then filed a motion to strike defendant's supplements and response to its motion to dismiss, arguing therein and at the hearing on the motion that defendant's petition was clearly labeled a section 2–1401 petition and that counsel could not supplement "a post-conviction petition that is yet to be filed." Importantly, the State argued:

> "This is not a case where the defendant files some document with the Court where it's unclear on its face whether it's a post-conviction petition or it's a 2–1401 petition and where the Court has to look at the substance of the petition and try to make a determination ***. This [document] comes right out and says it's a petition under 2–1401, and that's what he's stuck with."

In responding, defense counsel stated: "Your Honor, it was my original understanding from this when I was appointed that I was to supplement this motion and it was to be treated as a post-conviction petition." However, counsel then agreed that defendant's *pro se* pleading "only goes to the petition for relief from judgment," but argued:

-17-

"If the State desires that the Court examine the pleadings and determine whether or not they should be treated as post-conviction [*sic*] \*\*\* then so be it. And the Court can certainly do that.

\* \* \*

If the Court wants us to go back to square one and do that over again then we will, but the easier proceeding would be for this Court to review this matter and then treat it as a post-conviction petition. That's really what it should have been from the square one."

Thus, defense counsel conceded that, even though he had operated, since his appointment, under the belief that the pleading was to be treated as a postconviction petition, and had acted accordingly by supplementing defendant's *pro se* pleading, the recharacterization of that pleading had not occurred. It is therefore no surprise that, after taking the matter under advisement, the trial court filed a docket entry the next day noting that upon consideration of, *inter alia*, defendant's petition for relief from judgment, the State's motion to dismiss that petition, and the court file, it was granting the State's motion to dismiss the pleading, as it could not be "magically transformed" into a postconviction petition by defense counsel's mere filing of a supplemental pleading. I agree.

In *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010), this court recently held that where *Shellstrom* explicitly stated that a pleading does not become a postconviction petition until the defendant is given the *Shellstrom* admonishments, it follows that the Act's 90-day rule could not apply to a recharacterized petition until the defendant was fully admonished under *Shellstrom* "and recharacterization was fully completed." Indeed, "[i]f a trial court determines that recharacterization is appropriate, the court *must* take certain steps to insure that the defendant is admonished of the consequences of recharacterization. *Shellstrom*, 216 Ill. 2d at 57." (Emphasis added.) *Swamynathan*, 236 Ill. 2d at 112.

"The court is required to '(1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on

-18-

successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has.' *Shellstrom*, 216 Ill. 2d at 57; *Pearson*, 216 Ill. 2d at 68. *Significantly, if the court fails to give these admonishments, 'the pleading cannot be considered to have become a postconviction petition for purposes of applying to later pleadings the Act's restrictions on successive postconviction petitions*.' *Shellstrom*, 216 Ill. 2d at 57." (Emphasis added.) *Swamynathan*, 236 Ill. 2d at 112.

The majority contends that the absence of admonitions does not negate its conclusion that recharacterization occurred, holding that, "where, as here, a defendant's *pro se* petition is not summarily dismissed but is instead advanced for further review, and counsel is appointed to represent the defendant, *Shellstrom* admonitions are unnecessary." Slip op. at 12. However, in so finding, the majority ignores the fact that the function of the *Shellstrom* admonitions is to protect the rights of *pro se* defendants by informing them of the consequences of recharacterization. Under the majority's view, by the time counsel is appointed, the horse is already out of the barn, *i.e.*, the petition has *already* been recharacterized, so admonishments by counsel would be useless. *Shellstrom* admonishments apply to *pro se* defendants whose petitions the court intends to recharacterize, but which first provide those defendants with an opportunity to withdraw or amend their pleadings prior to recharacterization. Thus, appointing counsel after the fact cannot cure the failure to give admonishments prior to recharacterization.

Indeed, here, not only was defendant not admonished by the court when he was a *pro se* litigant, there is also no evidence to show that, thereafter, appointed counsel fulfilled that duty. Rather, defense counsel admitted that he had always treated the pleading as a postconviction petition, and therefore had no reason to explain to defendant that his clearly entitled petition for relief from judgment under section 2–1401 would now be subject to the Act's restrictions on successive postconviction petitions. Thus, without evidence that defendant received the protection of the *Shellstrom* admonishments from either the circuit court or appointed counsel, the majority

-19-

concludes that recharacterization occurred. I believe that where the record does not show that defendant received the benefit of the *Shellstrom* admonishments, and both the circuit court and the parties agreed that the unsupplemented pleading was a section 2–1401 petition, no recharacterization occurred. Further, to find that recharacterization occurred under these circumstances, as the majority does, is to deprive defendant of making a choice, the consequences of which could prejudice him as to the filing of any future postconviction petition.

Additionally, because the provisions of the Act cannot apply to pleadings that are not postconviction petitions until those pleadings are properly recharacterized as such (*Swamynathan*, 236 Ill. 2d at 115), the majority also mistakenly concludes that the trial court erred in denying defense counsel's motions to supplement. Slip op. at 13.

Because the *Shellstrom* admonitions were never given, recharacterization did not occur, and there is no postconviction petition to supplement or amend. Therefore, this court is not free to treat the pleading as a postconviction petition for purposes of its disposition, and its denial on the merits of the sentencing issue raised is not only unnecessary, but gives defendant less protection than is required under *Shellstrom*.

In *Swamynathan*, we noted that although the trial court took an inordinate amount of time to complete the *Shellstrom* admonishments while essentially treating the pleading as a postconviction petition, "the trial court's handling of the recharacterization process *** cannot be said to have prejudiced defendant in any way." *Swamynathan*, 236 Ill. 2d at 115-16. "The fact remains that the trial court is under no obligation to recharacterize a petition that could otherwise be disposed of on procedural grounds." *Swamynathan*, 236 Ill. 2d at 116. Thus, the trial court in this case was free to dispose of defendant's section 2–1401 petition without recharacterization, leaving him, subject to time constraints, free to file an original postconviction petition. Yet the majority insists that defendant's appointment of counsel prior to the dismissal of his *pro se* petition negates the duty of the trial court to admonish him as required by *Shellstrom*. What purpose does this serve? I am concerned that the majority's holding will not only muddy the clear rules of recharacterization set forth in *Shellstrom* and *Swamynathan* but,

-20-

contrary to *Swamynathan*, will also prejudice future defendants' rights to be clearly admonished in similar circumstances.

Accordingly, I agree with the majority that a trial court's decision not to recharacterize a *pro se* pleading as a postconviction petition may not be reviewed for error. I disagree with the majority's decision to affirm the appellate court's judgment as modified and to deny the petition on the merits. Instead, I would reverse the appellate court's judgment and affirm the circuit court's dismissal of defendant's *pro se* section 2–1401 petition, which was never recharacterized as a postconviction petition. For the foregoing reasons, I respectfully dissent.

CHIEF JUSTICE KILBRIDE and JUSTICE GARMAN join in this dissent.